William L. Jacoby, Jr., Appellant, v. Laura Warren Jacoby et al., Appellees.

Gen. No. 10,402.

Opinion filed November 29, 1950. Rehearing denied February 8, 1951. Released for publication February 12, 1951.

RUSSELL W. KEENEY, EDWIN R. FARRAR, and GORDON MOFFETT, all of Wheaton, for appellant.

BISHOP, MITCHELL & BURDETT of Chicago, and MELVIN F. ABRAHAMSON, of Naperville, for appellees; ROBERT J. BURDETT and WILLIAM C. WINES, both of Chicago, and MELVIN F. ABRAHAMSON, of Naperville, of counsel.

Mr. Justice Bristow delivered the opinion of the court.

Plaintiff, William L. Jacoby, Jr., is appealing from a decree of the circuit court of DuPage county, dismissing for want of equity plaintiff's complaint for an accounting, a declaration of trust, and an injunction to prevent his mother, the defendant Laura Warren Jacoby, from revoking a will and disposing of her property.

Plaintiff failed to file his notice of appeal within the 90-day period, or to perfect his appeal within the time designated by the statute, for certain vague and general reasons. This court, however, has granted his petition for leave to appeal, and shall consider the cause on the merits. The sole issue presented herein is whether the will of William L. Jacoby and Laura Warren Jacoby was executed pursuant to a contract, and became irrevocable after the death of William J. Jacoby.

From the pleadings and evidence adduced before the trial court, it appears that on April 2, 1923, William and Laura Jacoby executed a will which, in substance, provided that they each devised to the other their entire estate, and in case of the death of both in a common disaster, the entire estate should be held in trust by the First Trust and Savings Bank as trustee, for their surviving children, until they each reach the age of 30. The will was executed just three days before the Jacobys and their four children departed for Europe and was prepared in anticipation of that trip.

The scrivener of the instrument testified that a day or two before the will was drawn and executed Mr. Jacoby told him that the family was going to Europe either the next or second day, and that he wanted to draw a will, for he was concerned about their young children if he and his wife should die in a common disaster. He wanted a common disaster clause, and

suggested to the scrivener that the simplest way, because of the limited time, would be to draw a joint will which both he and Mrs. Jacoby could execute. He gave the lawyer Mrs. Jacoby's name. Nothing was said about the will being drawn in accordance with an agreement or contract, or being in any way irrevocable. Two days later Mr. and Mrs. Jacoby came into his office and the will was executed. There was no conversation other than introductions, for the Jacobys were in a great hurry due to their departure preparations. The scrivener had a vivid recollection of the will and the circumstances, since it was the only joint will he ever drew.

Mrs. Jacoby testified that she knew she was signing a will, but did not pay much attention to its contents or where she signed it. She and her husband had had no discussion about any provisions of the will, and whatever conversation there might have been, was simply to have a will drawn because of the impending journey.

She recalled that at the time of the execution of the will Mr. Jacoby's assets consisted essentially of life insurance, $90,000 of which was payable to her, and about $15,000 was payable to his estate. There was also a will in existence at the time by which Mr. Jacoby gave his entire estate to his wife. She stated that she did not need to ask her husband to make any will, for theirs was a happy life of complete trust, whereby she attended to the household management, the servants, and the children, and he attended to his work for A. G. Becker and Company, investment bankers, which involved considerable travel.

Upon their return from the European trip, Mr. Jacoby continued his same employment, in which he was eminently successful, and upon his death in 1930, his net estate was valued at approximately $240,000.

The Jacobys educated their children well. The daughters went to schools in Switzerland and at Bryn Mawr, and plaintiff graduated from a boy's school at Pawling. After the death of the father, Mrs. Jacoby sent plaintiff with one of his sisters to England for several months. Plaintiff was unable to get into Princeton University, and after a partial semester at Northwestern University, the authorities did not want him to continue there. He attended Boulder University for one year, and then an art school in Chicago. His mother took him and his brother to the Mediterranean for six weeks in 1931, and in 1934 she took plaintiff to England again.

In December 1935, plaintiff married the defendant Janet MacGillivray, and they had one child. That marriage was broken because of plaintiff's open and notorious adultery. Plaintiff at no time supported his wife, even though he was employed and had a good income, and the defendant Laura Jacoby bought them a home in Hinsdale and had to continuously support plaintiff's family. Occasionally plaintiff left his wife $5 or $10, and on one occasion, when his mother sent them money, he took it for a pleasure trip east, and his wife had to go with the child to plaintiff's sister's home and stay there for meals for some four days, since she had no funds. In the 13 months following the divorce decree, although plaintiff earned at least $400 a month, and the decree awarded his wife and child only $150 a month, plaintiff was in arrears some $1,520 in support money. His mother, defendant Laura Jacoby, has continued to support her grandchild, and because of this litigation, is temporarily living with plaintiff's former wife and child in Hinsdale, rather than at her home in Delaware.

As a consequence of plaintiff's conduct and refusal to support his wife and child, his mother made a new

will on June 19, 1945. Under this will the residue of her estate is divided into nine parts; three go to her daughter Laura Jacoby Noel, three to her son Charles Warren Jacoby, one to her daughter-in-law Janet MacGillivray Jacoby, one to her son, the plaintiff, William L. Jacoby, Jr., and the remaining share to her grandson, William L. Jacoby, III. Plaintiff and his divorced wife each take a life estate in the share given them, with a remainder over to the grandson, who receives his share at the age of 21. There is a right of invasion of principal at the discretion of the trustee, which is the Wilmington Trust Co. of Wilmington, Delaware.

In this proceeding for a declaration of trust and an injunction prohibiting defendant Laura Jacoby from revoking the former will, under which plaintiff, as one of the surviving children, would be entitled to a third of the entire estate, plaintiff contends that the joint will was executed pursuant to a contract, and became irrevocable after the death of William Jacoby.

Defendant Laura Jacoby denies that the will was executed in connection with, or as a result of, any contract, and maintains that no such contract can be construed from the terms of the will or the circumstances under which it was executed. In support thereof she offered the testimony of the scrivener who drafted the will, as well as her own statement.

The circuit court, after a hearing on the merits lasting several days, and covering the circumstances up to, and at the time of, the execution of the controverted will, as well as the circumstances which prompted defendant Laura Jacoby to make the will of June 19, 1945, concluded that there was no contract to execute the joint will of 1923, that it could therefore properly be revoked, and that plaintiff's complaint should be dismissed for want of equity.

It is incumbent upon this court to determine whether the decree of the circuit court dismissing the complaint

on the ground that the will of 1923 was revocable, is supported by the evidence.

 Courts have recognized the validity of joint wills where the same instrument is made the will of two or more persons and is jointly signed by them. A joint will is not of itself, without reference to the terms of the instrument, sufficient evidence of an enforceable contract to devise between the testators, so as to make the contract enforceable in equity by specific performance or quasi-specific performance through a declaration of trust, as plaintiff is seeking to do herein. (169 A. L. R. 68; 57 Am. Jur. 495.) Where, however, the provisions of the will are reciprocal, and it appears that they are each made in consideration of the other, the instrument is regarded as a joint and mutual will. (*Frazier v. Patterson,* 243 Ill. 80, 84.) Such a joint and mutual will may be irrevocable after the death of one of the parties where it is proven by clear and satisfactory evidence that such will was executed in pursuance to a contract between the parties, and that each will is the consideration for the other. (57 Am. Jur. 495, § 726; *Jordan v. McGrew,* 400 Ill. 275, 279; *Frazier v. Patterson, supra.*)

 The burden of proof is on the party asserting the existence of the contract, and he must establish that the will is contractual as well as testamentary in character. (169 A. L. R. 62.) This burden is not sustained by proof which permits an inference either way. (57 Am. Jur. 495.)

 There is authority for the view that a will, though jointly executed and reciprocal in its provisions, is not necessarily contractual in character. (*Beveridge v. Bailey,* 53 S. D. 98, 220 N. W. 462, 60 A. L. R. 619; *Clements v. Jones,* 166 Ga. 738, 144 S. E. 319; *Rastetter v. Hoenninger,* 214 N. Y. 66, 108 N. E. 210; *In re Estate of Rhodes,* 277 Pa. 450, 121 Atl. 327; *In re Estate of Cawley,* 136 Pa. 628, 20 Atl. 567; *Buchanan*

*v. Anderson,* 70 S. C. 454, 50 S. E. 12; *Wyche v. Clapp,* 43 Tex. 543; Page, Treatise on Wills, § 69.) "It does not follow merely because a husband and wife jointly sign a will, the terms and provisions of which are reciprocal, that the same was made in pursuance of a contract between the spouses, or that the devises therein contained are irrevocable." (57 Am. Jur. 497.)

The Illinois courts have not had occasion to clearly differentiate between the amount and character of proof of a contract required where a single instrument with reciprocal bequests is involved, and where separate instruments with reciprocal bequests is involved. In each case the existence of the contract has been deduced from the terms of the particular will, and the circumstances therein. (*Curry v. Cotton,* 356 Ill. 538.)

The Illinois courts have insisted that where separate wills with reciprocal provisions are involved, the mutual wills are not themselves sufficient evidence of a contract, and proof of the contract and the consideration to support it, must be made *aliunde.* (*Jordan v. McGrew, supra.*) In the *McGrew* case the court stated at p. 279:

"To render mutual wills operative as being made one in consideration of the other, and for such wills to become irrevocable as joint wills made under contract, the contract must be certain and definite in all its parts, it must be mutual, founded upon an adequate consideration, and established by the clearest and most convincing evidence."

In another Illinois case where the court construed a single instrument signed by both parties, it was held that under the particular provisions of the will there was evidence of an agreement or compact in the will itself. (*Frazier v. Patterson, supra.*)

Inasmuch as plaintiff did not establish the existence of an express contract dehors the will, as alleged in his

284

pleadings, and relies principally upon the *Frazier* case to sustain his contention that the joint will was *per se* a contract and irrevocable, this court will consider the case very closely.

The husband and wife therein executed a joint will giving each other a life estate, and after the death of both, a life estate to their only child with the remainder to her children. The husband died and the wife enjoyed the benefits of the life estate. Prior to her death, the grandchildren sought to have a distribution of the estate in accordance with the joint will. They introduced no evidence other than the will itself, nor was there presented any evidence rebutting the existence of a contract or a contractual intent. The sole issue, therefore, was whether the particular will on its face evidenced a contract to make a will, or whether the grandchildren would have to produce additional proof of the contract in order to prove their claim.

The court, after stating that great injustice would result if the surviving wife were permitted to revoke her part of the will, which was the consideration for the devise to her, and reiterating the necessity of proving a contract, found that the provisions of the will itself were proof that it was drawn in accordance with a mutual compact, and was, therefore, irrevocable.

It is readily apparent that there are major differences between that case and the case at bar, first with reference to the terms of the wills, and secondly as to the circumstances of execution, the testamentary intention, and the evidence submitted thereon to the court.

In the *Frazier* case, the will recited that the parties " 'declare this and none other' to be the testators' last will," a phrase which has been deemed significant in suggesting that the will was executed pursuant to a contract. (57 Am. Jur. 496; 169 A. L. R. 70.) There is no such phraseology in the controverted will at bar.

285

Moreover, each testator in the *Frazier* case gave the other merely a life estate, thereby intentionally limiting the surviving spouse's dominion over the property, whereas in the instant case the first paragraph contains a gift simpliciter by each testator of the entire estate to the other, as the latter's absolute property with no restrictions on the surviving spouse's use of the property. This plan of distribution tends to militate against any presumed intention to make the will irrevocable, or to inhibit either spouse's right to make a later will, or otherwise dispose of the estate.

In the instant case, furthermore, in sharp contrast to the *Frazier* case, there is substantial and uncontroverted evidence rebutting any presumption of a mutual compact. Inasmuch as the terms of the will must be considered in the light of the circumstances under which it was executed to properly determine that factual issue of whether it was executed in pursuance of a contract (169 A. L. R. 70 and cases cited), it is significant that the scrivener who drafted the will herein testified that there was absolutely no reference by the testators to any agreement to make the will, or render it irrevocable. He explained that Mr. Jacoby intimated that he wanted to make a will because of the imminent ocean voyage, for he was well aware of its many hazards and wanted a clause to take care of the children in case he and his wife were killed in a common disaster. Mr. Jacoby suggested that because of the limited time, since they were leaving the next day or two, a joint will would be the simplest and most expeditious form, and he gave the lawyer Mrs. Jacoby's name. That was the extent of their conversation. It is a reasonable inference that, if Mr. Jacoby, as an experienced business man, wanted a contract drawn to limit his and his wife's future right of testation, he would have so informed his lawyer.

As herebefore noted, Mrs. Jacoby stated that there was no discussion concerning any of the provisions of the will. She merely knew they were going to make wills before they left on the voyage, to take care of the children in case they were killed in a common disaster. She did not even recall who suggested the will, which was executed in a great hurry because of the many matters to be attended to incidental to their departure. Her mere knowledge that she was going to make a will, and that she and her husband were going to give their property to each other, does not establish a contract between the testators, nor an intention to make the will contractual in character.

The evidence revealed that the provisions of the will giving each surviving testator the entire estate were not the consideration for each other, inasmuch as Mr. Jacoby had a will in existence at the time giving his wife his entire estate, the bulk of which consisted of life insurance in the amount of $90,000 of which she was the beneficiary. Since Mrs. Jacoby was the recipient of his entire estate at the time, it cannot be inferred that her devise to her husband was the consideration of his bequest to her, or that she would give up her right to dispose of her own property by a will or gift, in consideration of her husband's joining in the execution of a new will which gave her nothing that he had not already given her.

The account of their way of life further negatives the interpretation that Mr. Jacoby left his estate to her only because she agreed to leave her property to him. It is apparent, therefore, from the circumstances and the conduct of the parties that the provisions were combined in a joint instrument for convenience, and to construe the will itself as a contract, is a distortion of the avowed intention of the testators. Thus, it is clear that the decision in the *Frazier* case, predicated on a

287

materially different will, and without any evidence of the circumstances of its execution, or the intention of the testators, cannot be deemed determinative of the rights of the plaintiff herein.

The dictum of the court, moreover, that it is not possible that a joint will could be executed without some previous understanding or agreement, when considered apart from the context of the opinion is somewhat broad, and inconsistent with the general statements of law made by that court. Admittedly, there would be previous knowledge of the provisions of the joint will by the parties, but this knowledge, and the execution of the wills as one document cannot be deemed conclusive that the devises were made in consideration of each other, and constituted a binding contract. As hereinbefore noted, a contrary intention is evident in the instant case.

Plaintiff William Jacoby, Jr. also relies upon the case of *Curry v. Cotton*, 356 Ill. 538, to sustain his contention that the will itself was conclusive of a contract. That case involved the issue of whether a joint will was revocable without notice. The husband and wife therein executed a joint will whereby the survivor covenanted to give his or her entire estate at the time of death to the children of the wife by a former marriage. In determining that the will was executed in pursuance of a contract, and therefore irrevocable, the court stressed the use of the word "covenant" in various paragraphs of the will, and the fact that it was under seal, factors which are not present in the case at bar. With reference thereto, the court stated:

"The will, amongst other matters, states as follows: 'The surviving testator of this covenant, either Stephen S. Curry or Nora Fowler Curry, bequeaths by this will, etc. The sixth clause states, 'It is further covenanted,' etc. The word 'Covenant' is defined as 'an

agreement, convention, or promise of two or more parties, by deed in writing signed, sealed and delivered, by which either of the parties pledges himself to the other that something is either done or shall be done or stipulates for the trust of certain facts.' (citation) A covenant, in common parlance, is a written agreement, whether under seal or not. (15 C. J. 1209; 7 R. C. L. 1084.) In the case at bar the instrument is under seal. This imports a consideration both at law and in equity.''

In this case the Supreme Court had before it the *Frazier* case as a cited authority, and if that case set forth, as plaintiff contends, a new and different rule of substantive law, whereby joint wills are themselves conclusive evidence of a contract, and *per se* irrevocable, there would have been no need for the court in the *Curry* case to analyze and stress the significance and import of the word ''covenant'' and the seal. The court, nevertheless, after stating the rule that a joint will is irrevocable only if it is executed pursuant to a contract, was constrained to find additional distinguishing features in the will, other than the reciprocal provisions, in order to determine that there was such a contract.

The court, moreover, quoted with approval from *Edson v. Parsons,* 155 N. Y. 555, 568, where it was stated that a joint will executed by a husband and wife was not in itself conclusive evidence of a contract, but a material circumstance to be considered in determining whether the joint will was made in pursuance of a contract. In reviewing the authorities, the court further noted the necessity for restricting the remarks of court to the particular joint will before it, in determining the existence of a contract.

It is interesting to note that despite the additional features of the seal and the frequent use of the word

"covenant" in the *Curry* case, there was a strong dissenting opinion, wherein the justice insisted that even more substantial evidence was necessary to establish that the will was executed pursuant to a contract. The dissenting justice stated:

"Joint and mutual or reciprocal wills, especially when executed by husbands and wives usually are based upon mutual trust ànd confidence, but that fact alone neither makes the instrument a contract, nor destroys its ambulatory character."

The ambulatory character of a will is stressed by Page in his Treatise on Wills, sec. 69, wherein it is stated:

"If the joint or mutual will is not made in pursuance of any contract, the right of the testator to revoke it is beyond question. If made in pursuance of a contract between testators, such will stands on the same footing as any will made in pursuance of a contract, not a joint or mutual will; that is, the will itself may be revoked, but the contract in pursuance of which the will was made, may be enforced in an action at law for damages or a suit in equity. . ."

From the foregoing analysis it appears that the Illinois courts, in accordance with the weight of authority, have held that a joint or mutual and reciprocal will was irrevocable only where it had been executed pursuant to a contract. As hereinbefore noted, no such contract can be inferred from the terms of the will in the instant case. Moreover, the circumstances at the time of the execution of the will, and the avowed intentions of the testators, as attested by the scrivener of the instrument and one of the parties, clearly rebuts any presumption of a contract between the testators.

It appears from the evidence, furthermore, that plaintiff, who was afforded the bounties of life by his mother, at no time supported his wife and child, even

though he had a good income. His mother, the defendant Laura Warren Jacoby, supported his family and bought a home for them, and even after plaintiff caused his wife to secure a divorce on the grounds of open and notorious adultery, his mother continued to support the wife and child, since he failed to make the payments provided in the divorce decree. Under these circumstances, defendant Laura Warren Jacoby, in an effort to assure her grandchild the necessaries of life, and his proportionate share in her estate, has executed a new will, by which the plaintiff still has a share in the estate.

Inasmuch as the plaintiff's former wife and son are parties to this proceeding, if this court were to sustain plaintiff's contentions that the joint will of 1923 was *per se* irrevocable, and that his mother cannot dispose of her property, but must hold in trust his 1/3 share of the estate, it is apparent that, unlike the *Frazier* case, equity would not be done, and the maxim that he who seeks equity must come with clean hands, would be set at naught.

It is therefore our judgment that the determination of the trial court that the joint will of William and Laura Jacoby was not executed in pursuance of a contract between the testators, and was, therefore, revocable, is amply supported by the evidence, and should properly be affirmed.

*Judgment affirmed.*