ORA RAUCH, Plaintiff-Appellee, *v.* FRANK RAUCH, Indiv. and as Ex'r of the Estate of Dicie B. Rauch, *et al.*, Defendants-Appellants.

Fourth District   No. 4—82—0540

Opinion filed February 8, 1983.—Rehearing denied March 4, 1983.

William A. Sunderman, of Anderson Law Offices, of Charleston, for appellants Frank Raugh and Edna Webb.

Richard O. Erdmann, of Follmer, West & Erdmann, of Champaign, for appellant Opal Ledbetter.

Paul L. Stone, of Stone & Stone, of Sullivan, for appellee.

JUSTICE MILLS delivered the opinion of the court:
When is a joint will a "joint and mutual will?"
Answer: this one.
The trial court so found.
We agree—and affirm.
In 1959, Julius and Dicie Rauch jointly executed a will, leaving their property first to each other and then, after the death of the survivor of them, to their four children: Frank Rauch, Edna Webb, Opal Ledbetter, and Earl Rauch.
In 1969, Julius Rauch died and the joint will was admitted to probate.
In 1978, one of the children, Earl Rauch, died leaving his entire estate to his wife.
In 1981, the surviving testator, Dicie Rauch, died. The joint will was again admitted to probate.
The widow of the deceased son filed a complaint for construction of the joint will. The trial court found that the will was a joint and mutual will and that on the death of Julius the rights of the four children became vested. The court also found that the vested interest of the deceased son passed on his death to his widow and she was therefore entitled to all of the interest which he took under his parents' will.
The testators' surviving children filed a motion for reconsidera-

tion which was denied. They then brought this appeal.

The surviving children argue that their parents' joint will was not a "joint and mutual will." They further argue that the interest of their deceased brother lapsed under the provisions of section 4—11 of the Probate Act of 1975 (Ill. Rev. Stat. 1981, ch. 110½, par. 4—11) (the antilapse statute) when he predeceased his mother, Dicie Raugh. They argue that because their deceased brother's interest lapsed, his widow did not take any interest under their mother's will.

In reply, the widow argues that the joint will was a "joint and mutual will" and that the interest of her husband became vested on the death of his father, Julius, and therefore did not lapse when he predeceased his mother.

The first issue that we must decide is whether the joint will of Julius and Dicie Raugh is a "joint and mutual will."

It is.

A "joint and mutual will" is a single testamentary instrument which contains the wills of two or more persons. It is executed jointly and disposes of property owned in severalty, in common, or jointly by the testators. (*Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 150 N.E.2d 144.) A joint and mutual will must be executed pursuant to a contract between the testators, requiring the survivor of them to dispose of the property as the will's provisions instruct. (*Peck v. Drennan* (1951), 411 Ill. 31, 103 N.E.2d 63.) The joint and mutual will may, however, itself comprise the contract. (*Helms v. Darmstatter* (1966), 34 Ill. 2d 295, 215 N.E.2d 245.) As in any contract, some consideration between the parties is necessary. When the joint and mutual will is executed by husband and wife, the mutual love and respect which the testators have for each other is sufficient consideration. (*Frazier v. Patterson* (1909), 243 Ill. 80, 90 N.E. 216.) The contract embodied in a joint and mutual will becomes irrevocable after the death of one of the testators. (*In re Estate of Edwards* (1954), 3 Ill. 2d 116, 120 N.E.2d 10.) Thereafter, the survivor is estopped from disposing of the property other than as contemplated in the will and the contract between the testators may be enforced by the third-party beneficiaries. *Bonczkowski.*

The issue of whether a jointly executed will is in fact a "joint and mutual will" has been litigated in the courts for hundreds of years. The issue is important because jointly executed wills which are not also mutual are not subject to any of the requirements or burdened by any of the restrictions that we have outlined. Although each case must be viewed individually, there are five common characteristics of a "joint and mutual will" that have been repeatedly recognized by Illi-

nois courts.

*First,* we look for the label the testators have assigned to the will—whether they refer to it as their joint and mutual will. *Bonczkowski.*

*Second,* we look for reciprocal provisions in the will—whether the testators made a disposition of his or her entire estate in favor of the other. *Helms.*

*Third,* we look for a pooling of the testators' interests. In a joint and mutual will the testators pool all of their interests—whether owned jointly, in common, or severally—into one joint fund. *Tontz v. Heath* (1960), 20 Ill. 2d 286, 170 N.E.2d 153.

*Fourth,* we look for a common dispositive scheme under which the parties dispose of the common fund by bequeathing it to their heirs in approximately equal shares. *Helms.*

*Fifth,* we look for the use by the testators of common plural terms such as "we" and "our" as further evidence of the testators' intent to make a joint and mutual will. *Bonczkowski.*

■■ The will in the case at bar clearly contains all five common characteristics. First, in the will itself, Julius and Dicie Rauch refer to the will as their "joint and mutual last will and testament." Second, the will contains reciprocal provisions. The second paragraph of the will states:

> "*** [W]e give, devise and bequeath unto the survivor of us, all of the property, real, personal and mixed of which the one of us who dies first is seized or possessed, to be his or her absolute property."

Third, the testators pooled their interests into a common fund. The will disposes of property owned solely, as tenants in common, and as joint tenants by the testators. Fourth, the common fund of assets is disposed of by a common dispositive scheme in which the testators' heirs receive equal shares. Each of the couple's four children receives an equal share of cash, and one-fourth of the real property. Fifth, the testators used the term "we" and "our" throughout the entire will. For example, "Our joint and mutual last will and testament"; "We give, devise and bequeath unto the survivor of us"; and "We hereby direct our executors ***."

The presence of all five characteristics clearly indicates that Julius and Dicie Rauch intended their joint will to be a "joint and mutual will."

■■ The surviving children also argue that the phrase in the second paragraph of the will that "we give *** unto the survivor of us, all of the property *** of which the one of us who dies first is seized

\*\*\* to be his or her absolute property" negates any possibility that this is a "joint and mutual will." They argue that the word "absolute" means that the survivor had complete control over the property including the power to change the dispositive scheme. This exact argument was rejected by the Supreme Court of Illinois in *Helms*. The court there refused to focus on the word "absolute" and to interpret it to mean that the survivor had absolute power over the property. The court said that where equal treatment for the family is provided in the will, it would be illogical to interpret the will as giving the survivor the power to upset that dispositive scheme.

Next, the surviving children argue that their brother's interest under the will lapsed because he predeceased his mother. Under the antilapse statute, in the absence of an express provision to the contrary, a legacy to a descendant of a testator who predeceases the testator and leaves no descendants lapses and passes as part of the residue.

The antilapse statute, however, simply does not apply in the present case. Under a joint and mutual will, the death of the first testator determines whether the legacy lapses because the interest of the beneficiaries vest on the death of the *first testator*—not on the death of the surviving testator.

■ As we noted earlier, the contract contained within a "joint and mutual will" becomes irrevocable on the death of the first testator. At this time, a life estate is created in the surviving testator and the third-party beneficiaries receive a gift over. (*First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532.) Therefore, because the interest of the third-party beneficiaries comes into being on the death of the first testator (*Tontz*), it does not lapse when the beneficiary survives the first testator to die, even if he predeceases the surviving testator. In the case at bar, the deceased son survived the first testator to die (his father) and therefore his interest did not lapse when he predeceased his mother. Instead, because his interest was vested, it passed to his widow on his death.

For the above reasons, we hold that the court below correctly found that the deceased son's widow was entitled to the interest bequeathed to her husband under the "joint and mutual will" of his father and mother.

Affirmed.

TRAPP and MILLER, JJ., concur.