133 Ill. App.3d 777 (1985)
479 N.E.2d 500
In re ESTATE OF HERMAN SCHWEBEL, Deceased (Herman Winter et al., Plaintiffs-Appellees,
v.
Phillip Sheets et al., Defendants-Appellants).
No. 5-84-0430.
Illinois Appellate Court  Fifth District.
Opinion filed May 30, 1985.
*778 *779 William R. Hotto, of Hotto & Dusek, of Fairview Heights, for appellants.
Robert J. Sprague, of Sprague, Sprague & Ysursa, and Roza Gossage, of Hutnick & Gossage, both of Belleville, for appellees.
Judgment affirmed.
JUSTICE WELCH delivered the opinion of the court:
This action commenced with the filing for probate of the September 19, 1980, will of Herman Schwebel in the circuit court of St. Clair County by defendant Phillip Sheets. Plaintiffs filed their petition seeking that the 1980 will be declared inoperative in light of an alleged joint and mutual will executed in 1960 by Herman Schwebel and his brother Ralph. After evidentiary hearings, the trial court found that the 1960 will was a joint and mutual will and that the 1980 will was inoperative. Plaintiffs herein are nephews and nieces of the Schwebel brothers; defendants are the son, daughter and wife of a deceased nephew of the Schwebel brothers, plus Eugene Jones, a longtime neighbor and friend. Defendants appeal with the exception of Jones, who is not involved in this appeal. We affirm.
The Schwebel brothers died unmarried and without issue. They lived with their sister until her death in 1955, after which time they lived alone together on their farm. Their relationship was by all accounts remarkably close. In 1956 the brothers executed a joint will in which each left all of his estate to the survivor of them, without provision for disposition upon the death of the survivor. The brothers executed a second joint will in 1960. As the text of the 1960 will is virtually dispositive of this appeal, we set it forth in its entirety with the exception of signature and attestation:
"JOINT LAST WILL AND TESTAMENT OF RALPH SCHWEBEL AND HERMAN SCHWEBEL
We, Ralph Schwebel and Herman Schwebel, brothers, of New Athens Township, St. Clair County, Illinois, being of sound mind and memory, do hereby make, publish and declare the following to be our joint Last Will and Testament, hereby revoking any and all former wills by us heretofore made:
FIRST: We order and direct our executor to pay and discharge all of our just debts and funeral expenses as soon after our respective deaths as may be convenient. We also direct our said executor to pay and discharge all taxes, including Illinois Inheritance taxes and Federal Estate taxes out of the assets of our respective estates and direct and request that the payment of said taxes shall not be charged against the beneficiary or beneficiaries under this Will and Testament.

*780 SECOND: We give and bequeath the sum of Five Hundred ($500.00) Dollars to the State Bank of New Athens, Illinois, for the upkeep, care and maintenance of the Schwebel Cemetery lot located in the Oak Ridge Cemetery, New Athens, Illinois, said State Bank of New Athens to invest said fund in accordance with the usual and general practice now prevailing in said community, intended to provide continued care and maintenance of lots in said cemetery.
THIRD: After the payment of the foregoing provisions, we give, bequeath and devise unto the survivor of us all of our estate, real, personal or mixed, of every kind and description and wherever situated, the same to be the absolute property of said survivor.
FOURTH: After the death of the survivor, or in the event our deaths occur simultaneously, or under circumstances that it may be difficult to determine who died first, we give and devise unto Herman Winter, our nephew, `the old Schwebel Farm or homestead' located in New Athens Township, St. Clair County, Illinois, in fee simple, and in the event the said Herman Winter predeceases the survivor, then said farm shall go to his children in equal shares.
FIFTH: After the death of the survivor, or in the event our deaths occur simultaneously, or under circumstances that it may be difficult to determine who died first, we give and devise unto Irene Kunkelmann, our niece, the farm known as the `Hulliung Farm, and also known as the George Mueller Farm', located in New Athens Township, St. Clair County, Illinois, in fee simple and in the event the said Irene Kunkelmann shall predecease the survivor, then said farm shall go to her children in equal shares.
SIXTH: Our executor shall have full power and authority to make proper deed or deeds of conveyance to carry into effect the provisions of Clause Fourth and Clause Fifth of this our Last Will and Testament.
SEVENTH: After the death of the survivor of us, or in the event our deaths occur simultaneously under circumstances that it may be difficult to determine who died first, we give, bequeath and devise all the rest, residue and remainder of our respective estates, real, personal or mixed, and wherever situated, to our surviving nephews and nieces, including the nephew and niece under Clause Fourth and Clause Fifth.
EIGHTH: In order to make proper distribution among the *781 nephews and nieces we direct and request our executor to reduce our entire estate to money and said executor shall have full power and authority to sell the same, either personal or real, at either private or public sale and to give proper deed or deeds for the conveyance thereof.
NINTH: We hereby nominate and appoint the survivor of us to be the Executor of this our Last Will and Testament, without bond. After the death of the survivor, or in the event that our deaths occur simultaneously, or under circumstances that it may be difficult to determine who died first, we nominate and appoint the State Bank of New Athens, Illinois, to be the executor hereof. We further request our executor to employ our friend, Hilmar C. Lindauer, for all legal matters required for the administration of our respective estates and in the event of his inability to act as such, then the Law Firm of Lindauer, Lindauer, Pessin & Nieman, or their successors, shall be so employed; our said executor and the attorneys employed by them, in whom we have complete confidence, shall make all necessary and proper funeral arrangements for our burial in the family lot in Oak Ridge Cemetery."
Attorney Hilmar Lindauer was the scrivener as to the 1956 and 1960 wills. His partially legible handwritten notes regarding the 1960 will, in evidence at trial and included in the record on appeal, do not appear to expressly refer to any agreement by the Schwebel brothers not to revoke the 1960 will. The 1960 will was admitted to probate as the will of Ralph Schwebel. At the time of his death, the brothers owned considerable real estate, most of it jointly. Thereafter, during the period prior to his death, Herman Schwebel lived with and was cared for by the Sheets family. Herman Schwebel executed three wills in 1980, the last dated September 19, 1980, in which Herman left the bulk of his estate to defendants Phillip, Clara, and Dorothy Sheets. Phillip Sheets petitioned for admission of the September 19, 1980, will to probate. This petition was granted and letters testamentary issued to Phillip Sheets. Thereafter plaintiffs filed their petition seeking that the 1960 will be declared binding on Herman Schwebel's estate and the 1980 will ineffective. Said petition also sought that certain inter vivos transfers by Herman Schwebel be declared invalid as in conflict with the provisions of the 1960 will. The petition further alleged that Herman was without testamentary capacity in 1980 to make the 1980 will or to revoke the 1960 will, and that defendants had procured the 1980 will by undue influence upon the testator.
Much of the evidence at trial concerned the issues of testamentary *782 capacity and undue influence.
Curt Lindauer testified at trial that he was an attorney since 1954, a nephew and associate of Hilmar Lindauer, and the scrivener of Herman Schwebel's 1980 will. According to Curt Lindauer, the policy of the law office at and after the time the 1960 will was prepared was to distinguish a "joint and mutual" will from a mere "joint" will by so labeling the respective documents; the former type of will, if prepared by his office, would also include a statement of the testators' agreement not to alter or revoke absent consent.
Irene Kunkelmann, a niece of the Schwebel brothers, and her husband, Willard, testified at trial that they had lived on and farmed a portion of the Schwebel brothers' real estate on a rental basis until after Ralph Schwebel's death. Eventually the Kunkelmanns purchased said land from Herman Schwebel, though said land was devised to the Kunkelmanns in the 1960 will. Over defendants' objections, the Kunkelmanns testified that in response to their inquiries as to the advisability of making certain investments in the premises, Ralph Schwebel had told them to go ahead; he and Herman had made a joint will which could not be changed.
After the trial, the trial court found in a written order that a valid and binding contract existed between Herman and Ralph Schwebel whereby each agreed that the 1960 joint will was binding regarding distribution of their property; the court further held that the obligation of the 1960 contract had priority over Herman's 1980 will. The court ordered that Phillip Sheets be enjoined from dealing with the property of the estate as executor; that defendants render an account of all property received by them under the 1980 will; that funds received by defendants from Herman Schwebel as a result of certain named transactions prior to Herman's death be accounted for and surrendered; and that a named attorney be appointed as administrator to collect. The court did not reach the issues of testamentary capacity or undue influence. Defendants' post-trial motion was denied, and they appeal.
 1 We proceed directly to the central issue of this appeal, i.e., whether the trial court erred in concluding that the 1960 joint will was a joint and mutual will which became irrevocable upon the death of Ralph, the first of the Schwebel brothers to die. A joint and mutual will must be executed pursuant to a contract between testators requiring the survivor of them to dispose of the property as the will's provisions instruct. The joint and mutual will may itself comprise the contract. Upon the death of one of the testators, the contract becomes irrevocable. Thereafter, the survivor is estopped from disposing *783 of the property other than as contemplated in the will, and the contract between the testators may be enforced by third-party beneficiaries. Rauch v. Rauch (1983), 112 Ill. App.3d 198, 200, 445 N.E.2d 77, 79-80.
This court and our supreme court have often had the opportunity to consider whether a given joint will was a joint and mutual will, and authority on the subject is not scarce. (See In re Estate of Briick (1959), 24 Ill. App.2d 77, 164 N.E.2d 82, and cases discussed therein.) The vast majority of cases on the subject concern joint wills of husband and wife. There are exceptions (see Peoria Humane Society v. McMurtrie (1907), 229 Ill. 519, 82 N.E. 319 (mother and son); Buehrle v. Buehrle (1920), 291 Ill. 589, 126 N.E. 539 (brothers)), which unfortunately do not address the contentions raised by the parties in the instant case. It has been stated that the joint will of a husband and wife gives rise to the presumption that such will is executed pursuant to a contract between the testators not to revoke the will. (See Frazier v. Patterson (1909), 243 Ill. 80, 85, 90 N.E. 216, 218.) However, approval of this "presumption" has not been unqualified. The later decisions appear reluctant to permit the presumption to be sufficient in itself; rather, the courts search the terminology of the will for an expression of intention on the part of the testators to stand in the stead of supporting proof. In re Estate of Edwards (1954), 3 Ill.2d 116, 122, 120 N.E.2d 10, 14; see Bonczkowski v. Kucharski (1958), 13 Ill.2d 443, 453, 150 N.E.2d 144, 150.
 2 However, in the case at bar, we need not be concerned with the effect of any presumption arising out of the marital relationship. Rather, we examine the will itself and the relevant circumstances of the parties (see Tontz v. Heath (1960), 20 Ill.2d 286, 290-91, 170 N.E.2d 153, 156) to determine the testators' intent and the extent of their agreement, if any (see First United Presbyterian Church v. Christenson (1976), 64 Ill.2d 491, 498, 356 N.E.2d 532, 536). No express contract or express reference thereto appears in the terms of the instant will. As observed in Rauch v. Rauch, there are five common characteristics of a "joint and mutual" will which have been repeatedly recognized by Illinois courts:
"First, we look for the label the testators have assigned to the will  whether they refer to it as their joint and mutual will. [Citation.]

Second, we look for reciprocal provisions in the will  whether the testators made a disposition of his or her entire estate in favor of the other. [Citation.]

Third, we look for a pooling of the testators' interests. In a *784 joint and mutual will the testators pool all of their interests  whether owned jointly, in common, or severally  into one joint fund. [Citation.]

Fourth, we look for a common dispositive scheme under which the parties dispose of the common fund by bequeathing it to their heirs in approximately equal shares. [Citation.]

Fifth, we look for the use by the testators of common plural terms such as `we' and `our' as further evidence of the testators' intent to make a joint and mutual will. [Citation.]" (112 Ill. App.3d 198, 201, 445 N.E.2d 77, 80.)
With the exception of the first of the five considerations set forth in Rauch v. Rauch, the above factors, insofar as they are applicable to joint testators not married, all favor the inference that the 1960 will was intended to be joint and mutual. We do not view the sole exception as to the label chosen as sufficient to require the contrary result. (Cf. Helms v. Darmstatter (1966), 34 Ill.2d 295, 215 N.E.2d 245 (will nominally "joint" held to be joint and mutual).) Each testator has made a disposition in favor of the other; the testators' interests are pooled in one fund, regardless of form of ownership; the will disposes of all of the estate of both testators; the estate is distributed without regard to who owned it; the use of common plural terms such as "we" and "our" is consistent throughout. We note as further strengthening that inference that the brothers were notoriously close in terms of trust and affection. A presumed relationship of mutual trust and confidence between spouses is the basis of the presumption of agreement not to revoke expressed in the cases which indulge in that presumption. (See Proctor v. Handke (1983), 116 Ill. App.3d 742, 746, 452 N.E.2d 742, 746.) In our view the fact that two brothers of such remarkable closeness chose to dispose of their estates by joint instrument is, at the least, an additional factor indicating strongly the testators' agreement not to revoke.
 3 Citing Jacoby v. Jacoby (1950), 342 Ill. App. 277, 290, 96 N.E.2d 362, 367, defendants urge that there was no consideration given for any promise by Herman not to revoke the 1960 will. We question whether the comments in Jacoby v. Jacoby relied upon by defendants properly recognize that no interest vests in the beneficiaries of the will of one who yet lives. The primary consideration between two testators who execute a joint and mutual will is the promise of each for that of the other. Peck v. Drennan (1951), 411 Ill. 31, 37, 103 N.E.2d 63, 66.
Defendants argue that plaintiffs' petition so completely fails to state a cause of action that the trial court erred in refusing to dismiss *785 it. Defendants argue that plaintiffs' mere conclusion in their petition that "[i]n and by the execution of such Will * * * the Schwebel brothers agreed to so dispose of their property" was a mere conclusion of the pleader and thus entitled to no weight. However, a copy of the 1960 will was appended to said complaint, thus providing a sufficient statement of the facts relied upon. In considering the question whether or not a complaint states facts and not conclusions of the pleader, the whole complaint must be considered and not its disconnected parts. Stenwall v. Bergstrom (1947), 398 Ill. 377, 383, 75 N.E.2d 864, 867.
 4 Defendants further contend against the sufficiency of the petition that since the 1960 will contained no express contract, plaintiffs were required to rely upon the presumption set forth in Frazier v. Patterson; further, that since testators in this case were not husband and wife, the presumption could not apply, and therefore the complaint was insufficient. As we have noted above, such presumption was not necessary to proof of plaintiffs' cause of action. It necessarily follows that plaintiffs were not required to plead the existence of facts supporting such presumption to state a cause of action.
Pleadings shall be liberally construed with a view to doing substantial justice between the parties (Ill. Rev. Stat. 1983, ch. 110, par. 2-603(c)), though a complaint must state a cause of action (Pelham v. Griesheimer (1982), 92 Ill.2d 13, 17, 440 N.E.2d 96, 98). No pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet. (Ill. Rev. Stat. 1983, ch. 110, par. 2-612(b); Stenwall v. Bergstrom (1947), 398 Ill. 377, 383, 75 N.E.2d 864, 867.) The instant petition fairly satisfies the latter standard; in our view, the thoroughness with which the instant issues were tried by both sides belies any contention to the contrary.
 5 Defendants argue that the trial court was without authority to appoint an administrator to collect because Phillip Sheets had already been appointed executor of the last will of Herman Schwebel. In Day v. Bullen (1907), 226 Ill. 72, 80 N.E. 739, relied on by defendants, our supreme court stated that it knew of no authority for the appointment of an administrator to collect while the administratrix held her office and exercised the duties and functions pertaining to it. However, that court further observed that the authority of the administratrix continued only so long as the letters of office remained unrevoked by the court granting them. Here, the court expressly divested Phillip Sheets of his office. That the 1980 will purporting to nominate him as executor was ineffective to do so was, if proved, a "contingency *786 * * * productive of delay in the issuance of letters of office," and the estate was liable to loss and waste if for no other reason than its considerable size and income. (See Ill. Rev. Stat. 1983, ch. 110 1/2, par. 10-1.) In light of our conclusion that the 1960 will was a joint and mutual will, we view this as an appropriate situation for the appointment of an administrator to collect.
 6 Defendants further urge that no pleading for Phillip Sheets' removal from office or for appointment of an administrator to collect was before the court. We find a request for Phillip Sheets' removal from office to be implicit in plaintiffs' petition. Further, while letters of office may be revoked only for the reasons stated in the statute (In re Estate of Chapman (1982), 104 Ill. App.3d 794, 796, 433 N.E.2d 313, 314), where such reason exists the court is authorized by statute to remove the representative on the court's own motion. (Ill. Rev. Stat. 1983, ch. 110 1/2, par. 23-2(a).) Regarding defendants' further protest that no wrongdoing by Phillip Sheets was shown, we do not view such a showing as necessary to removal where the representative is acting under letters secured by false pretenses. Ill. Rev. Stat. 1983, ch. 110 1/2, par. 23-2(a)(1).
 7 Defendants argue that the trial court erred in considering evidence outside the 1960 will in determining whether said will was executed pursuant to the Schwebel brothers' agreement not to revoke. Our supreme court has implicitly condoned the consideration of evidence outside the will in disposing of such an issue. (Tontz v. Heath (1960), 20 Ill.2d 286, 291-92, 170 N.E.2d 153, 156; Bonczkowski v. Kucharski (1958), 13 Ill.2d 443, 453, 150 N.E.2d 144, 150; see also In re Estate of Briick (1959), 24 Ill. App.2d 77, 96-97, 164 N.E.2d 82, 91.) In any event, while there was evidence adduced by plaintiffs on matters outside the will, such matters pale to insignificance compared to the 1960 will itself, the terms of which were the basis upon which plaintiffs' case was constructed. Thus, any error in this regard was harmless at most.
 8 Defendants argue that testimony by Herman Winter, Irene Kunkelmann and Willard Kunkelmann concerning statements by Ralph Schwebel to the effect that the 1960 will was irrevocable should have been excluded under the Dead Man's Act. (Ill. Rev. Stat. 1983, ch. 110, par. 8-201.) This position is without merit, primarily because defendants are not defending in any of the capacities specified by the statute, within the meaning of the statute. As was stated in reference to the Dead Man's "statute" in Fleming v. Mills (1899), 182 Ill. 464, 470, 55 N.E. 373, 375, quoting from Mueller v. Rebhan (1879), 94 Ill. 142, 149:

*787 "`Although the parties claimed their respective rights and sued and were sued in respect to rights held by inheritance, yet the statute could have no application to such case. The statute in this regard was intended to protect the estates of deceased persons from the assaults of strangers, and relates to proceedings wherein the decision sought by the party so testifying would tend to reduce or impair the estate, and does not relate to the relative rights of heirs or devisees as to the distribution of an estate in proceedings by which the estate itself is in no event to be reduced or impaired.'"
(See also Treleaven v. Dixon (1886), 119 Ill. 548, 553, 9 N.E. 189, 191; 81 Am.Jur.2d Witnesses secs. 319, 321 (1976).) Further, we would be remiss in failing to note that the estate in question here is that of Herman Schwebel, whereas the testimony complained of concerned the statements of his brother, this removing the evidence in question from the ambit of the statute. Finally, the testimony in question is of minor significance, particularly since (as the trial court expressly noted) the bias of the witnesses was obvious. Any error in its admission was harmless at most, since it is the language in the 1960 will which provides the best demonstration of the intent of the testators at the time of its execution.
 9 Defendants argue that the trial court erred in admitting the same testimony for the further reason that the conversations were inadmissible hearsay. Aside from our conclusion above that any error with respect to admitting this testimony was harmless at most, we find no error, as the state of mind (i.e., intent) of the testators was in issue here. (See In re Estate of Edwards (1954), 3 Ill.2d 116, 120 N.E.2d 10.) Evidence admissible to prove an agreement not to revoke a joint will may take various forms, such as the instrument itself, or the competent testimony of competent witnesses as to the declaration of the testators or as to relevant facts and circumstances. (Bonczkowski v. Kucharski (1958), 13 Ill.2d 443, 150 N.E.2d 144.) We conclude that the testimony in question was not inadmissible hearsay.
In summary, we find no cause for reversal upon this record. The judgment of the circuit court of St. Clair County is affirmed.
Affirmed.
JONES, P.J., and HARRISON, J., concur.