CATHERINE YOUNG, Indiv. and as Next Friend of Kevin Young, *et al.*, Minors, Plaintiffs-Appellees, v. FRANK E. YOUNG *et al.*, Defendants-Appellants.

Fifth District   No. 5—90—0136

Opinion filed March 26, 1991.

James L. Van Winkle and Theodore Van Winkle, both of Van Winkle & Van Winkle, of McLeansboro, for appellants.

Alan C. Downen, of McLeansboro, for appellees.

JUSTICE CHAPMAN delivered the opinion of the court:

Beatrice Young and Frank Young executed a joint will on December 30, 1964. The will provided in part as follows:

"We, Frank E. Young and Beatrice Q. Young, husband and wife, *** being of sound mind and memory, do hereby make, publish and declare this to be our Last Will and Testament, hereby revoking all prior wills, codicils and testamentary dispositions by us, or either of us, as follows:

***

SECOND: We give, devise and bequeath to each other respectively, all the rest, residue and remainder of our estate, respectively, both real, personal and mixed, of whatsoever kind and nature, and wheresoever situate, of which we may die seized or possessed, respectively or to which we may be entitled to at the time of our deaths, respectively, to have and to hold same for and during the life of the survivor of us.

THIRD: After the decease of both of us it is our will, and the will of each of us, and we, and each of us, do and does direct that all the estate which we, or either of us shall own or may be entitled to at the time of our deaths, or the death of the survivor of us, both real and personal or mixed, of whatsoever kind and nature, and whereever [sic] the same may be situate, shall go and be paid over, delivered, transferred and conveyed as follows:

[1](a) To our son, Rex Lanier Young, the forty (40) acres of land in Carmi Township, inherited by testator, Beatrice Q. Young, from her father, Edward Questell, described as follows:

The Southeast fourth of the Northeast Quarter of Section 28, Township 5 South, Range 9 East of the Third Principal Meridian, in White County, Illinois, and containing 40 acres, more or less;

Also, in addition to said 40 acres, we give and devise to our son, Rex Lanier Young, the following described land, to-wit: A part of the Northeast fourth of the Northwest Quarter of Section 23, Township 5 South, Range 9 East of the Third Principal Meridian, in White County, Illinois, containing 36.24 acres, more or less, EXCEPT a parcel of ground 200 X 225 feet in

---

[1]For purposes of this opinion, the three parcels of realty conveyed to Rex Young will be referred to as tracts I, II, and III, respectively.

the Northwest corner of said premises hereinafter devised to Basil Quinton Young; also

The East one-half (½) of all that part of Section 22, Town 5 South, Range 9 East of the Third Principal Meridian, in White County, Illinois, containing 68.03 acres, more or less, that lies North and West of the New York Central Railroad.

(b) To our son, Sydney Franklin Young, Lot No. 18, Block Two (2) of Young's Sub-division to Carmi, Illinois, containing .50 acres, more or less; also

An undivided ½ interest in 398 acres, more or less, Mayberry Township, in Hamilton County, Illinois.

(c) To our son, Julian Kent Young, the following described real estate, to-wit:

An undivided ½ interest in 398 acres, more or less, in Hamilton County, Illinois, in Mayberry Township.

(d) To our son, Basil Quinton Young, a parcel of ground and improvements thereon, described as follows:

A part of the Northeast ¼ of the Northwest ¼ of Section 23, Township 5 South, Range 9 East of the Third Principal Meridian, in White County, Illinois, described by metes and bounds as follows: Beginning at a point on the South line of State Highway Route 460 at the Northwest corner of the Northeast ¼ of the Northwest ¼ of said Section 23, running thence South to the present fence line approximately 225 feet, thence East 200 feet, thence North 225 feet to the South line of State Highway Route 460; thence West on the South line of State Highway Route 460, 200 feet to the place of beginning; also

The West ½ of all that part of Section 22, Town 5 South, Range 9 East of the Third Principal Meridian, in White County, Illinois, containing 68.03 acres, more or less, that lies North and West of New York Central Railroad.

* * *

FIFTH: This joint will is made in pursuance of an agreement between us for the purpose of disposing all of our property, whether owned by us as joint tenants, as tenants in common, or in severalty, in this our Last Will and Testament."

Beatrice Young died February 5, 1966. Her estate was fully administered, and the representative discharged from his office on January 30, 1967. Rex Young died intestate on March 4, 1989, survived by the plaintiffs in this case, his spouse, Catherine Young, and his minor children, Kevin, Lisa, and Tina. Following the death of Rex Young, Frank Young executed a new will on July 11, 1989, devising

one parcel of property to Catherine Young, and the residue of his property to his sons, Basil, Julian and Sidney. In addition, Frank Young, Basil, Julian, and Sidney executed two deeds, conveying tracts I and III to Sidney Young, and conveying tract II to Basil Young. On July 28, 1989, the plaintiffs filed their cause of action to declare that the will of Beatrice Young and Frank Young was joint and mutual and, therefore, irrevocable, to establish their ownership of tracts I, II, and III, and to set aside the conveyances to Sidney Young and Basil Young as clouds upon their title. When Frank Young died November 17, 1989, plaintiffs amended their complaint to further allege that the will of Frank Young, dated July 11, 1989, was void. The trial court granted plaintiffs' motion for summary judgment. Defendants appeal. We affirm.

■ The first issue is whether the will executed by Frank and Beatrice Young is a joint and mutual will. In their answer to plaintiffs' complaint, the defendants admit the allegations contained in paragraphs one, five, and six:

"1. On the 30th day of December, 1964, the defendant, Frank E. Young, together with his wife, Beatrice Q. Young, duly made and executed their *joint and mutual will* ***."

"5. The said Beatrice Q. Young died on the 5th day of February, 1966, leaving the said *joint and mutual will* as her last will and testament, *** the defendant, Basil Quinton Young, filed his petition for probate of the said *joint and mutual will* and for Letters of Administration *** and prayed that the said *joint and mutual will* be admitted to probate and Letters of Administration with the Will Annexed issue to the defendant, Sidney Franklin Young."

"6. All of the defendants herein and the said Rex Lanier Young entered their appearance and Waiver of Notice on probate of said *joint and mutual will* of the said Beatrice Q. Young, and on the 10th day of February, 1966, the said *joint and mutual will* was admitted to probate as and for the Last Will and Testament of the said Beatrice Q. Young, and no appeal was taken by any of the heirs, devisees or legatees of the said Beatrice Q. Young from the said order admitting the said *joint and mutual will* to probate." (Emphasis added.)

An admission in an answer is binding on the party making it and, as to such party, it is conclusive as to the admitted facts. (*Severy v. McDougall* (1913), 259 Ill. 272, 273, 102 N.E. 407, 408; *Western Life Insurance Co. v. Chapman* (1975), 31 Ill. App. 3d 368, 372, 334 N.E.2d 806, 809.) While the admissions might establish a joint and mutual

will by themselves, we have examined the record and find that the evidence establishes that it was a joint and mutual will.

■ A joint and mutual will is a single testamentary instrument which contains the wills of two or more persons. It is executed jointly and disposes of property owned in severalty, in common, or jointly by the testators. (*Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 200, 445 N.E.2d 77, 79, citing *Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 449, 150 N.E.2d 144, 148.) A joint and mutual will must be executed pursuant to a contract between testators requiring the survivor of them to dispose of the property in accordance with the will's provisions. The joint and mutual will may itself comprise the contract. (*In re Estate of Schwebell* (1985), 133 Ill. App. 3d 777, 782, 479 N.E.2d 500.) The mutual promises of the husband and wife are sufficient consideration to support the agreement to make a joint will with reciprocal provisions. (*Curry v. Cotton* (1934), 356 Ill. 538, 547, 191 N.E. 307, 311.) There is no disagreement that the will at issue is a joint will. The question remains whether the instrument is a joint and mutual will.

■ It has long been recognized in Illinois that there are five common characteristics of a joint and mutual will:

" '*First*, we look for the label the testators have assigned to the will—whether they refer to it as their joint and mutual will. [Citation.]

*Second*, we look for reciprocal provisions in the will—whether the testators made a disposition of his or her entire estate in favor of the other. [Citation.]

*Third*, we look for a pooling of the testators' interests. In a joint and mutual will the testators pool all of their interests—whether owned jointly, in common, or severally—into one joint fund. [Citation.]

*Fourth*, we look for a common dispositive scheme under which the parties dispose of the common fund by bequeathing it to their heirs in approximately equal shares. [Citation.]

*Fifth*, we look for the use by the testators of common plural terms such as "we" and "our" as further evidence of the testators' intent to make a joint and mutual will. [Citation.]' "

*In re Estate of Schwebel* (1985), 133 Ill. App. 3d 777, 783-84, 479 N.E.2d 500, 505, quoting *Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 201, 445 N.E.2d 77, 80.

■ ■ As to the first trait, it is only in paragraph fifth of the will that the parties refer to the instrument as their "joint will." None of the other paragraphs of the will include the word "joint" in describ-

ing the instrument. However, where the sole exception of meeting the five criteria is the label, the trial court is not precluded from finding that the instrument is a joint and mutual will. *In re Estate of Schwebel*, 133 Ill. App. 3d at 784, 479 N.E.2d at 505.

Second, the will contains reciprocal provisions, as evident in paragraph second of the will:

"We give, devise and bequeath to each other respectively, all the rest, residue and remainder of our estate, respectively, \*\*\* to have and to hold same for and during the life of the survivor of us."

Third, Frank and Beatrice Young pooled their interests into a common fund. As stated in the defendants' brief, and uncontested by the plaintiffs, as of the date the will was executed, Beatrice Young owned in fee simple, tract I; Frank Young owned tracts II and III. The remaining described real estate in the will was owned by Frank and Beatrice Young, or was owned by Beatrice Young, the above-named defendants, and Rex Young, jointly. The will disposes of all of the estate of both testators.

Fourth, the common fund of assets is disposed of by a common dispositive scheme in which each of the four children receives virtually an equal share in the real property owned by the testators. The estate is distributed without regard to who owned it. As directed under the will, the testators' four children also receive an equal share in the residue of the estate.

Fifth, the testators used the terms "we" and "our" throughout the entire will.

Based on the existence of the five criteria in the will at issue, we are persuaded that the trial court was correct in concluding that it was intended to be joint and mutual. The case requires further discussion, however, because the defendants argue that in order to sustain the will as a joint and mutual will, it is necessary that the will be effective to pass the property of the deceased testator, and that distribution of the property must not be suspended until after the death of the last testator. Defendants cite *Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 150 N.E.2d 144, as support for their position that the will is not joint and mutual, because its language postpones distribution of the testators' property until after the death of both testators.

In *Bonczkowski*, the court held that the joint instrument was ineffective at the death of the first testator to transfer any interest in the jointly owned property. The court found that the whole of the estate passed to the surviving joint tenant:

"Because the joint instrument provides that it is not to be effective until after the death of both testators, and because neither the instrument nor the real property involved was of the character that would permit a separation of estates and probate at the death of each maker, it is our conclusion that the instrument was not the valid will of either maker." (*Bonczkowski*, 13 Ill. 2d at 451, 150 N.E.2d at 149.)

Unlike the instrument in *Bonczkowski*, it is undisputed that the joint will was admitted to probate upon the death of Beatrice Young, and her estate was fully administered. Since the original instrument of Beatrice and Frank Young did allow for probate at the death of each testator, we find that the trial court did not err in finding that the will was joint and mutual.

■ Defendants next argue that upon the death of Beatrice Young, title to the real estate described in the will did not vest in the named devisees. Defendants cite various provisions of the will in support of their argument that the interests to be conveyed under the will were contingent. For instance, defendants contend that provision third of the will postponed distribution of any interest to the children until after the death of both testators. Although the language in the joint and mutual will does not expressly state that the devisees have a vested interest in the real estate upon the death of one of the testators, it is axiomatic that the contract in a joint and mutual will becomes irrevocable on the death of the first testator. At this time, a life estate is created in the surviving testator and the third-party beneficiaries receive a gift over. (*Rauch*, 112 Ill. App. 3d at 202, 445 N.E.2d at 81, citing *First United Presbyterian Church v. Christenson* (1976), 64 Ill. 2d 491, 356 N.E.2d 532.) The interests of the beneficiaries vest on the death of the first testator and not on the death of the surviving testator. *In re Estate of Knight* (1989), 178 Ill. App. 3d 777, 779, 533 N.E.2d 949, 951.

Defendants also argue that if the intent of the testators as to provision first of the will is to be carried out, then the interest of Rex Young must be contingent. Provision first reads:

"It is our will and we direct that all of our debts and funeral expenses of us, or either of us, be paid as soon as possible after our deaths, respectively."

Defendants argue that Rex Young's interest could not vest at the time of Beatrice Young's death because it was subject to total defeat and contingent upon satisfaction of all prior claims against the testators' estate.

■■ ■ Section 18—14 of the Probate Act of 1975 (Ill. Rev. Stat. 1989, ch. 110½, par. 18—14) provides in part:

"All the real and personal estate of the decedent and the income therefrom *** are chargeable with the claims against the estate, expenses of administration, estate and inheritance taxes and legacies without distinction ***. *** [T]here is no priority as between real and personal estate ***."

It is clear that an otherwise vested interest is subject to the debts of the estate and can be defeated by a sale to pay debts. The devisee acquires a vested, but not an absolute, interest in the property. (*Peters v. Peters* (1950), 342 Ill. App. 270, 277, 96 N.E.2d 369, 372.) Based on the foregoing, we find that the interest of Rex Young vested upon Beatrice Young's death.

■■■ Defendants next argue that the interest of Rex Young lapsed as of the death of Frank Young, since Rex Young predeceased Frank Young. Under the antilapse statute (Ill. Rev. Stat. 1989, ch. 110½, par. 4—11), in the absence of an express provision to the contrary, a legacy to a descendant of a testator who predeceases the testator and leaves no descendants lapses and passes as part of the residue. We find that the antilapse statute does not apply in the instant case. Under a joint and mutual will, the death of the first testator determines whether the legacy lapses because the interest of the beneficiaries vests, not on the death of the surviving testator, but on the death of the first testator. See *Rauch*, 112 Ill. App. 3d at 202, 445 N.E.2d at 81.

■■■ The testators' surviving children next argue that Frank Young was entitled to revoke his will at any time. Defendants' argument is premised on their belief that the will is not a joint and mutual will. We have already determined that the testamentary instrument at bar is a joint and mutual will. Under a joint and mutual will, the interests of the beneficiaries vest on the death of the first testator. Thereafter, the survivor is estopped from disposing of the property other than as contemplated in the will. (*Schwebel*, 133 Ill. App. 3d at 782-83, 479 N.E.2d at 504; *Rauch*, 112 Ill. App. 3d at 200, 445 N.E.2d at 79-80.) We find that Frank Young was estopped from revoking the joint and mutual will by making a new will, and, therefore, the trial court did not err in finding that Frank Young's will dated July 11, 1989, was null and void.

■■■ Likewise, Frank Young was estopped from conveying more than his life estate in the realty. The contract contained within a joint and mutual will becomes irrevocable on the death of the first testator. At that time, a life estate is created in the surviving testator. In the

absence of an express grant of such authority in the will under which the life estate was created, a life tenant is without power to convey the fee to real estate by sale, *inter vivos* gift or appointment. (*Rauch*, 112 Ill. App. 3d at 202, 445 N.E.2d at 80; *First United Presbyterian*, 64 Ill. 2d 491, 356 N.E.2d 532.) Frank Young was bound by the joint and mutual will after the death of Beatrice Young. He could not thereafter convey more than his life estate in the realty bequeathed in the will.

In light of the foregoing, we find no cause for reversal, and the judgment of the circuit court of White County is affirmed.

Affirmed.

RARICK, P.J., and GOLDENHERSH, J., concur.