NOTICE

Decision filed 12/28/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 220361-U

NO. 5-22-0361

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* ESTATE OF MAXINE E. SPITLER, Deceased | ) | Appeal from the |
| | ) | Circuit Court of |
| (Peoples State Bank, Newton, Illinois, Independent | ) | Jasper County. |
| Representative of the Estate of Maxine E. Spitler, | ) | |
| Deceased, and as Successor Trustee of the Maxine E. | ) | |
| Spitler Revocable Living Trust, dated January 18, 1994, | ) | |
| as amended, | ) | |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 19-P-11 |
| | ) | |
| Thomas Chapman, Kathleen Thomas, Eileen Maneely, | ) | |
| John Chapman, Adam Kornick, Judy L. Hrvatin, Janette | ) | |
| M. Healy, Mary L. Chapman Bruschini, Amy Potts, | ) | |
| Sharon Warnes, Sheryl Lawless, Dorothy Brown, Gail A. | ) | |
| Crawford, Linda G. Brock, Carol Montgomery, Michael | ) | |
| Henry, Margaret Kijonka, Ashley Q. Hesler, Seth Hesler, | ) | |
| Sunrise Youth Center and Community Building, Inc., | ) | |
| Blake Potts, and Unknown Heirs or Legatees of John R. | ) | |
| Spitler and Maxine E. Spitler, Deceased, | ) | |
| | ) | |
|     Respondents-Appellees | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Norma Jean Aldrich and Kelly Aldrich, | ) | Honorable |
| | ) | Martin W. Siemer, |
|     Respondents-Appellants). | ) | Judge, presiding. |

_____

    JUSTICE CATES delivered the judgment of the court.
    Justice Welch concurred in the judgment.
    Justice Barberis dissented.

1

**ORDER**

¶ 1    *Held*:   The trial court had jurisdiction to decide the matters raised by the petitioner's complaint for declaratory judgment. The trial court's findings that a prior will executed in 1965 by husband and wife was a joint and mutual will that became irrevocable upon the death of the husband, and that the wife breached her contractual obligations under the 1965 joint and mutual will when she executed a subsequent will and trust with an asset distribution plan that violated provisions in the 1965 joint and mutual will, were not against the manifest weight of the evidence. The trial court did not abuse its discretion in imposing a constructive trust on the assets in the wife's probate estate and trust and ordering an accounting and distribution of those assets in accordance with the distribution plan in the joint and mutual will.

¶ 2    This action began with the presentation of the Last Will of Maxine E. Spitler, dated December 8, 2008 (2008 Will) for probate in the circuit court of Jasper County. Shortly after the 2008 Will was admitted to probate, the petitioner, Peoples State Bank, as Independent Representative of the Estate of Maxine E. Spitler, deceased, and as Successor Trustee of the Maxine E. Spitler Revocable Living Trust, dated January 18, 1994, filed a complaint for declaratory relief in the probate case. The petitioner alleged that an actual dispute had arisen between the beneficiaries (the Chapman respondents[1]) of a prior joint and mutual will executed by Maxine E. Spitler and her husband, John R. Spitler on July 11, 1965 (1965 Will), and two beneficiaries under Maxine's 2008 Will and a related trust, Norma Jean Aldrich and Kelly Aldrich (the Aldrich respondents[2]). The petitioner asked the trial court to determine the rights of these respondents to the assets in the probate estate of Maxine E. Spitler in light of the 1965 Will. After

---

[1]The Chapman respondents are heirs at law of either John Spitler or Maxine Spitler. At the time of Maxine's death, Thomas Chapman, Kathleen Thomas, Eileen Maneely, John Chapman, Adam Kornick, Judy L. Hrvatin, Janette M. Healy, Mary L. Chapman Bruschini, Sharon Warnes, Sheryl Lawless, and Dorothy Brown were Maxine's heirs at law, and Gail A. Crawford, Linda G. Brock, Carol Montgomery, and Michael Henry were heirs at law of John Spitler.

[2]The Aldrich respondents, along with respondents, Margaret Kijonka, Ashley Q. Hesler, Sunrise Youth Center and Community Building, Inc, and Blake Potts, are beneficiaries of the Maxine E. Spitler Revocable Living Trust, dated January 18, 1994. They are not heirs-at-law of either John Spitler or Maxine Spitler, and they are not beneficiaries of the 1965 Will.

2

a trial and extensive briefing, the trial court found that the 1965 Will was a joint and mutual will that became irrevocable upon John's death, and that the distribution plan in Maxine's 2008 Will and related trust violated the terms of the 1965 Will and should not be given effect. The court directed the petitioner to place all probate and trust assets in the Estate of Maxine E. Spitler, deceased, into a constructive trust, to conduct an accounting, and to distribute the assets in accordance with the distribution plan in the 1965 Will.

¶ 3    The Aldrich respondents appealed. Initially, this court concluded that the trial court erred when it granted the petitioner's complaint for declaratory judgment, and thereby effectively invalidated the 2008 Will. We found that the trial court improperly declared the 1965 will to be an irrevocable joint and mutual will and the last, valid, and unrevoked will of Maxine Spitler, when that will had not been not admitted for probate, and that the court improperly ordered the distribution of all probate and trust assets in accordance with the 1965 will. See *In re Estate of Spitler*, 2023 IL App (5th) 220361-U (June 21, 2023).

¶ 4    The Chapman respondents filed a timely petition for rehearing pursuant to Illinois Supreme Court Rule 367 (eff. Nov. 1, 2017), claiming that this court misapprehended the dual nature of a joint and mutual will. They argued that the joint and mutual will executed by John and Maxine was a contract that became irrevocable upon John's death, and that as third-party beneficiaries of the contract, they had a right to enforce it through a contract claim against the Estate of Maxine Spitler. They further argued that this case did not involve a will contest. Therefore, there was no requirement that the 1965 Will be offered for probate as Maxine's last valid will in order for the trial court to determine the contractual obligations arising from the 1965 will and the appropriate remedies for a breach of those obligations. We then asked the Aldrich respondents to file an answer to the petition for hearing. In their answer, the Aldrich respondents argued that a joint and mutual

3

will is both contractual and testamentary in nature, that it must be admitted to probate and enforced through a will contest, a claim for breach of contract, or an equitable claim for specific performance, and that no such claim or contest was brought by the Chapman respondents. They contend that this court's original decision was correct and that the Chapman respondents' petition for rehearing should be denied.

¶ 5 After considering the arguments in the parties' original and supplemental briefings and reexamining the record, we find that the trial court had jurisdiction to decide the Chapmans' contractual claim against the estate, that the court's finding that Maxine breached her contractual obligations under the 1965 Will was not against the manifest weight of the evidence, and that the court ordered appropriate equitable remedies. Accordingly, we grant the petition for rehearing, withdraw our prior order of June 21, 2023, filed pursuant to Illinois Supreme Court Rule 23 (eff. Jan. 1, 2021) (*In re Estate of Maxine E. Spitler*, 2023 IL App (5th) 220361-U), and substitute this order in its place.

¶ 6                                    I. BACKGROUND

¶ 7 The basic facts in this case are undisputed. On July 11, 1965, John R. Spitler and Maxine E. Spitler, a married couple with no children, jointly executed a "Joint and Mutual Last Will and Testament" (1965 Will). John died on November 29, 1981.

¶ 8 On January 7, 1982, the circuit court of Lawrence County admitted the 1965 Will to probate as John's last valid will and appointed Maxine as executor of John's estate. The 1965 Will contained the following provisions:

> "FIRST: We direct our executor hereinafter named to pay all of our just debts and funeral expenses as soon after our decease as conveniently may be done.

4

SECOND: We hereby give, devise, and bequeath all of the rest, residue and remainder of our property, real, personal and mixed, and of every kind and character and wheresoever the same may be situated, to the survivor of the two of us.

THIRD: At the death of the survivor of the two of us, we hereby direct that so much of the residue and remainder of our property, real, personal and mixed, and of every kind and character and wherever the same may be situated, as then may remain, be divided into two equal shares, one share of which we hereby give, devise and bequeath to the then legal heirs at law of John R. Spitler, as may be determined by the laws of the descent of the State of Illinois then in force, and the remaining equal share we hereby give, devise and bequeath to the then legal heirs at law of Maxine E. Spitler, as may be determined by the laws of the descent of the State of Illinois then in force.

FOURTH: We hereby nominate, constitute and appoint the survivor of the two of us to be the executor of this, our Joint and Mutual Last Will and Testament, he or she to act without bond. In the event of the inability of said executor to act for any reason, we hereby nominate and appoint G.O. Chapman, of Bridgeport, Illinois, to be the executor of this, our Joint and Mutual Last Will and Testament."

¶ 9    On July 1, 1985, during the administration of John's estate, a document entitled "Renunciation and Release of All Rights Under Last Will and Testament" (Renunciation) was filed in the probate proceedings. The Renunciation was signed by Dorothy Brown, Ira Chapman, and G.O. Chapman, all siblings of Maxine. It was also signed by Corine Harper, Bertha Jones, and Ruth Crawford, all siblings of John. One of the recitals in the document indicated that the signatories believed that it was the intent of John and Maxine that "all property interests owned by either, or both, should be the property of the other, absolutely." Each of the signatories released,

5

relinquished, and discharged any claim that he or she "might otherwise assert against any real, personal or mixed property, owned by John R. Spitler, and/or Maxine E. Spitler," arising from the 1965 Will. All of the signatories, except Dorothy Brown, died prior to the death of Maxine Spitler.

¶ 10      On December 6, 1989, Maxine filed the executor's final settlement report. Therein, Maxine stated that all debts, claims, court costs, and taxes had been paid, and that she, as executor, transferred "all remaining funds to herself as sole residuary legatee-devisee" under the 1965 Will. The circuit court approved the final report and closed the estate.

¶ 11      On January 18, 1994, Maxine created the "Maxine E. Spitler Revocable Living Trust" (Trust). In the years that followed, Maxine amended or restated the Trust document on four occasions, the last revision occurring on December 8, 2008.[3] Each version of the Trust set forth an asset distribution plan that differed from the plan that Maxine and John had agreed to and established in their 1965 Will. For example, the Trust devised specific gifts of personal or real property to persons who were not heirs of John or Maxine, such as the Aldrich respondents. Under the residual distribution clause in the Trust, the remainder of the trust assets were not distributed to John's heirs and Maxine's heirs in equal shares. On December 8, 2008, Maxine executed the 2008 Will, revoking all former wills and designating the Trust as sole legatee of her estate.

¶ 12      On May 1, 2019, Maxine died in Jasper County, Illinois. On June 4, 2019, Maxine's 2008 Will was admitted to probate and the petitioner was appointed as the independent representative of Maxine's estate and the successor trustee of the Trust.[4]

¶ 13      On June 13, 2019, the petitioner notified Maxine's heirs that the 2008 Will had been admitted to probate, and that they had a right to contest the validity of the 2008 Will by filing a

---

[3]The "Maxine E. Spitler Revocable Living Trust" and the subsequent amendments and restatements of the Trust will be referred to as "Trust" in this disposition.

[4]Norma Jean Aldrich, Kelly Aldrich, and Amy Potts executed documents declining to act as executor of Maxine's estate.

petition in the circuit court of Jasper County within six months from the date the will was admitted to probate, thus no later than December 4, 2019. The petitioner also published a notice of Maxine's death in the county newspaper and advised that all claims against her estate had to be filed on or before December 19, 2019.

¶ 14    On September 19, 2019, the petitioner filed a complaint for declaratory judgment in the probate action, pursuant to section 2-701 of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2018)). The petitioner alleged that it had learned of the existence of the 1965 Will sometime after Maxine's death and that an actual dispute has arisen between the Chapman respondents, as beneficiaries of the 1965 Will, and the Aldrich respondents, as beneficiaries of the 2008 Will, over the proper distribution of the assets in Maxine's estate. The petitioner further alleged that under the provisions of the 2008 Will, Maxine's entire probate estate was to be distributed to the Trust, and that the asset distribution plan in the Trust differed from the asset distribution plan in the 1965 Will. The petitioner asked for a judicial determination of the rights of the respondents to the "Probate Estate and Trust Estate of Maxine E. Spitler." The 1965 Will and the Renunciation were among the documents appended to the complaint as exhibits. The Chapman respondents, the Adrich respondents, and other beneficiaries of the Trust were named as party-respondents.

¶ 15    On November 5, 2019, the Chapman respondents[5] filed an answer to the petitioner's complaint and acknowledged the dispute between themselves and the Aldrich respondents. They affirmatively asserted that the 1965 Will was the joint and mutual will of John and Maxine, that the 1965 Will became irrevocable upon John's death, and that Maxine was estopped from changing

---

[5]Janette M. Healy, Mary L. Chapman Bruschini, and Amy Potts filed individual appearances in the action, and appeared separately from the other Chapman respondents.

the testamentary distribution plan set forth in the 1965 Will. The Chapman respondents sought a judgment declaring that the testamentary and distribution provisions in the 2008 Will and the Trust violated the agreement embodied within the 1965 Will and were therefore null and void. They also asked the trial court to place a constructive trust on all of the assets in Maxine's probate estate and trust, and to order an accounting and distribution of those assets in accordance with the terms of the 1965 Will.

¶ 16    On December 18, 2019, the Aldrich respondents filed an answer to petitioner's complaint, admitting all of the material allegations. They sought a judgment declaring that the 2008 Will was the last valid will of Maxine Spitler, and that the testamentary and distribution provisions in the 2008 Will and the Trust were valid and enforceable. The Aldrich respondents also filed affirmative defenses. Relying on the Renunciation document, the Aldrich respondents alleged that the Chapman respondents' interests under the 1965 Will had been released, and that the Chapman respondents were precluded or estopped from asserting any right, title, or interest arising from Maxine's 2008 Will and the Trust. In response, the Chapman respondents argued that the residuary legatees under the 1965 Will could not be determined until Maxine's death, that the signatories to the Renunciation had only contingent residual interests in John's estate when they signed the Renunciation, and that the Renunciation had no legal effect on their rights as residuary legatees under the 1965 Will.

¶ 17    On April 13, 2021, the Aldrich respondents filed a motion to dismiss petitioner's complaint for lack of subject matter jurisdiction pursuant to sections 2-619(a)(1) and (a)(5) of the Code (735 ILCS 5/2-619(a)(1), (a)(5) (West 2020)). The Aldrich respondents argued that the trial court lacked jurisdiction of all matters raised by the complaint for declaratory judgment. They claimed that the declaratory judgment action was effectively a "will contest," and that the petitioner, as a non-

8

interested party, lacked legal standing to contest the 2008 Will. They further claimed that the trial court did not have jurisdiction to consider the Chapman respondents' claim because the Chapman respondents had not properly filed a will contest within the statutorily prescribed six-month period set forth in sections 8-1 and 8-2 of the Probate Act of 1975 (755 ILCS 5/8-1, 8-2 (West 2018)).

¶ 18    On April 22, 2021, the petitioner filed a response to the Aldrich respondents' motion to dismiss. The petitioner denied the allegation that the complaint was intended as a will contest, asserting the complaint was filed because a controversy had arisen that necessitated a judicial determination. The Chapman respondents also filed a response to the motion to dismiss. The Chapman respondents claimed that the trial court had jurisdiction of the case because there was an actual controversy between the parties. The Chapman respondents noted that they were not challenging the validity of the 2008 Will, but rather whether its asset distribution plan should be enforced. They asserted that their claim was for breach of contract. Following a hearing on May 7, 2021, the trial court denied the Aldrich respondents' motion to dismiss the petitioner's complaint for lack of subject matter jurisdiction and set the declaratory judgment action for trial.

¶ 19    A bench trial was held on June 24, 2021. Pursuant to the stipulation of the parties, 11 exhibits were admitted into evidence. The exhibits included the 1965 Will, the Renunciation, and the original and amended Trust documents. The Aldrich respondents called Rita M. Kocher as their only witness. Kocher was a certified public accountant who prepared Maxine's tax returns. Kocher also served as the president of a charitable foundation that Maxine established. Kocher testified that Maxine funded the charitable foundation with her own money. Maxine also gifted some of her assets during her lifetime. Kocher testified that Maxine never considered there to be any limitations on the disposition of her properties. No additional witnesses were called. Following

9

closing arguments, the trial court allowed the parties to submit written briefs to supplement their closing arguments and took the matter under advisement.

¶ 20 On September 3, 2021, the Aldrich respondents, with leave of court, filed two additional affirmative defenses. The Aldrich respondents asserted that the Chapman respondents failed to file a claim based upon a breach of contract in the probate proceedings within the two-year statute of limitations set forth in section 18-12(b) of the Probate Act (755 ILCS 5/18-12(b) (West 2020)). The Aldrich respondents also asserted that the Chapman respondents failed to file an action to enforce a contract to make a will within two years after Maxine's death as set forth in section 13-221 of the Code (735 ILCS 5/13-221 (West 2020)).

¶ 21 On December 7, 2021, the trial court entered an order granting the petitioner's complaint for declaratory judgment. The court found that the 1965 Will was a joint and mutual will that became irrevocable upon John's death, and that Maxine was "then estopped from dispositions contrary to the common distribution directed in the Joint Will—½ to John's heirs and ½ to Maxine's heirs." The court further found that at the time the signatories signed the Renunciation in 1985, they had no vested right to renounce or disclaim any interests in the 1965 Will, and therefore, the Renunciation did not serve to release the rights of third-party beneficiaries to enforce John and Maxine's agreement to dispose of their property as set forth in the 1965 Will. Additionally, the court determined that the declaratory judgment action and related claims were filed within the applicable limitations period. The court concluded that Maxine's 2008 Will and Trust violated the terms of the 1965 Will, and declared it "to be of no effect as to the assets of the probate estate or the trust." The court ordered the petitioner to place Maxine's assets in a constructive trust, to conduct an accounting, and to distribute the assets in accordance with the 1965 Will. The Aldrich respondents' motion to reconsider was denied. This appeal followed.

¶ 22                              II. ANALYSIS

¶ 23    On appeal, the Aldrich respondents claim that the trial court lacked authority or jurisdiction to order a distribution of Maxine's assets in accordance with a will that had not been formally admitted to probate and had only been attached as an exhibit to a complaint for declaratory judgment. The Aldrich respondents further claim that the trial court erred in granting the complaint for declaratory relief, because in ruling on the complaint, the court "effectively and incorrectly" determined that the 2008 will was "invalid." Finally, the Aldrich respondents claim that the Chapman respondents should have filed a will contest, a complaint for breach of contract, or a complaint for specific performance to resolve the inconsistencies between the two wills.

¶ 24    At the outset, we reaffirm our previous finding that the trial court had jurisdiction to decide this case. Subject matter jurisdiction refers to a court's power to hear and decide "cases of the general class to which the proceeding in question belongs" and to grant requested relief. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A.*, 199 Ill. 2d 325, 334-35 (2002). "With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota*, 199 Ill. 2d at 334. Under section 9 of article VI of the Illinois Constitution of 1970, the original jurisdiction of the circuit courts extends to all "justiciable matters" except in certain cases over which the supreme court has exclusive jurisdiction and in review of administrative actions. Ill. Const. 1970, art. VI, § 9; *Belleville Toyota*, 199 Ill. 2d at 337-38 (the legislature's power to define the circuit court's jurisdiction is limited to the area of administrative review). A justiciable matter is "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Belleville Toyota*, 199 Ill. 2d at 335.

11

¶ 25    Subject matter jurisdiction does not depend upon the legal sufficiency of the pleadings or the ultimate outcome of a suit. *Belleville Toyota*, 199 Ill. 2d at 340-41. Even a defectively stated claim is sufficient to invoke the circuit court's subject matter jurisdiction. *Belleville Toyota*, 199 Ill. 2d at 340-41. Once the circuit court obtains subject matter jurisdiction, the court does not lose jurisdiction simply because it makes a mistake in determining the law, the facts, or both. *In re Estate of Pellico*, 394 Ill. App. 3d 1052, 1064-65 (2009) (quoting *People v. Davis*, 156 Ill. 2d 149, 156 (1993) (jurisdiction to decide a case carries with it the power to render an erroneous decision as well as a correct decision)). And, with the exception of a case of administrative review involving the exercise of special statutory jurisdiction, the fact that the litigants or the court may have deviated from statutory requirements does not operate to divest the court of subject matter jurisdiction. See *McCormick v. Robertson*, 2015 IL 118230, ¶ 22; *Belleville Toyota*, 199 Ill. 2d at 340-41.

¶ 26    In this case, the petitioner filed a complaint for declaratory judgment in the probate case, alleging that an actual dispute had arisen between the Chapman respondents and the Aldrich respondents over the proper distribution of the assets in the Probate Estate and the Trust Estate of Maxine E. Spitler. In their respective answers, the Chapman respondents and the Aldrich respondents acknowledged the dispute and each requested specific relief from the circuit court. These claims involve matters of contract and estate administration. They fall within the general class of cases presenting a justiciable matter to which the circuit court's original jurisdiction extends. *Belleville Toyota*, 199 Ill. 2d at 340. Therefore, the trial court had jurisdiction to hear and decide them.

¶ 27    Next, we consider whether the trial court erred in granting declaratory relief and ordering the petitioner to distribute Maxine's assets in accordance with the 1965 Will. Initially, it is

important to understand the nature of the pleadings at issue. The 2008 Will had been admitted to probate on June 4, 2019. The deadline for filing challenges to the validity of the 2008 will was December 4, 2019, and the deadline for making a claim against the estate was December 19, 2019. The petitioner filed a complaint for declaratory judgment on September 19, 2019. In the complaint, the petitioner alleged the existence of an actual dispute over the proper distribution of the assets in Maxine's estate requiring a judicial determination. The Chapman respondents filed an answer to the complaint on November 5, 2019. Therein, the Chapman respondents affirmatively asserted that the 1965 Will was a joint and mutual will that became irrevocable upon John's death, and that the asset distribution plans in the 2008 Will and the Trust violated the agreement embodied within the 1965 Will and were therefore null and void. They requested specific relief in the form of a constructive trust, an accounting, and a distribution in accordance with the terms of the 1965 Will. The record shows that the petitioner's complaint and the Chapman respondents' responsive pleadings and requests for relief were filed within the deadlines noted above.

¶ 28    In this case, the matters before the trial court were formed by the pleadings. The trial court was asked to determine whether Maxine breached the agreement in the 1965 will, when she executed a new will and trust after John's death that contained an asset distribution plan that was contrary to the plan in the 1965 Will. If the trial court found that Maxine breached her agreement, the court would next determine what remedies were available to the Chapman respondents as third-party beneficiaries of the agreement. After considering the evidence and arguments of the parties, the trial court issued a detailed order containing its findings and analysis. The trial court considered the 1965 will as a whole, analyzing its terms and the relevant circumstances of the testators and beneficiaries to determine the testators' intent. The trial court found that the 1965 Will was a joint and mutual will executed by John and Maxine; that the joint and mutual will constituted a contract

13

between John and Maxine to distribute their assets to their heirs in equal parts; and, that the contract became irrevocable upon John's death. The trial court further found that the asset distribution plans within the 2008 Will and the Trust violated the terms of the irrevocable contract within the 1965 Will.

¶ 29    During the trial court's analysis, a question arose as to the nature of the proceedings—was this a will contest or a claim against the estate. The trial court was aware of the differences between a will contest and a claim against a decedent's estate, but the court's findings on this point were unclear. Section 8-1 of the Probate Act recognizes the rights of any interested party to initiate a will contest within six months after a will is admitted to probate. 755 ILCS 5/8-1 (West 2018). The single issue in a will contest is whether the document produced is the last valid will of the testator. *In re Estate of Young*, 2020 IL App (2d) 190392, ¶ 25. A will contest is a *quasi in rem* proceeding against the will itself and it seeks to invalidate the will. *In re Estate of Ellis*, 236 Ill. 2d 45, 51 (2009). After the will is admitted to probate, an interested party has the right to present evidence of fraud, compulsion, forgery, or other improper conduct to establish the invalidity of a will. *In re Estate of Alfaro*, 301 Ill. App. 3d 500, 501 (1998). If a person challenging a will fails to initiate a will-contest proceeding within the six-month statutory period, then the validity of the will is established for all purposes. *Estate of Young*, 2020 IL App (2d) 190392, ¶ 25.

¶ 30    In contrast, a claim against the estate of a decedent is a personal action that is directed against an individual and requests a personal judgment. *Estate of Ellis*, 236 Ill. 2d at 52. Although there may be some overlap of evidence and remedies, a plaintiff who brings a tort claim or contract-based claim against an estate must establish the specific and distinct elements of the cause of action. *Estate of Ellis*, 236 Ill. 2d at 52. A claim against the estate of a decedent "whether based on contract, tort, statutory custodial claim or otherwise, may be filed with the representative or the

14

court or both." 755 ILCS 5/18-1(a) (West 2018). The claim must be in writing and provide sufficient information to apprise the representative of the nature of the claim or the relief sought. 755 ILCS 5/18-2 (West 2018). The time limit for filing a claim may be provided in the notice or in a publication and the date shall not be less than six months from the date of the first publication or three months from the date of mailing or delivery, whichever is later. 755 ILCS 5/18-3 (West 2018). If a claim is filed, the representative or "any other person whose rights may be affected by the allowance of a claim or counterclaim may file pleadings with the clerk of the court," and the circuit court may order the parties to file further pleadings as the court directs. 755 ILCS 5/18-5 (West 2018).

¶ 31    Here, no interested party asserted that the 2008 Will had been improperly executed or attested. No one alleged that the 2008 Will was the product of fraud, forgery, or compulsion, or that Maxine lacked the testamentary capacity to execute it. Thus, this case did not present a classic will contest, challenging the validity of the 2008 Will. Instead, the Chapman respondents' claim was based on a contractual promise made in a joint and mutual will. The Chapman respondents alleged that the 1965 Will was a valid, enforceable contract that became irrevocable upon John's death, and that it was subsequently breached by Maxine. These allegations are not proper grounds for a will contest. In the absence of a will contest, there was no requirement that the Chapman respondents present the 1965 Will for admission to probate.

¶ 32    A joint and mutual will is a single testamentary instrument that contains the wills of two or more persons, executed jointly, and requires the survivor to dispose of the property according to the will's provisions. See *Rauch v. Rauch*, 112 Ill. App. 3d 198, 200 (1983); *In re Estate of Kaplan*, 219 Ill. App. 3d 448, 454 (1991); see also *Frazier v. Patterson*, 243 Ill. 80, 85 (1909) (joint and mutual cannot be rescinded by the surviving party "on the theory that the first that dies

15

carries his part of the contract into execution," and the courts will not permit the surviving party to breach the contract). The contract embodied in a joint and mutual will becomes irrevocable upon the death of one of the testators; thereafter, the survivor is estopped from disposing of the property other than as contemplated in the will and the contract may be enforced by third-party beneficiaries. *Rauch*, 112 Ill. App. 3d at 200; *In re Estate of Schwebel*, 133 Ill. App. 3d 777, 782-83 (1985). There are five common characteristics of a joint and mutual will. *Rauch*, 112 Ill. App. 3d at 201. The characteristics are (1) whether the testators referred to the will as their joint and mutual will; (2) whether the testators made a disposition of his or her entire estate in favor of the other; (3) whether the testators pooled all of their interests, whether owned jointly, in common, or severally, into one joint fund; (4) whether the parties dispose of the common fund by bequeathing it to their heirs in approximately equal shares; and (5) whether the testators used common plural terms such as "we" and "our" as evidence of an intent to make a joint and mutual will. *Rauch*, 112 Ill. App. 3d at 201. The 1965 Will contained all of the aforementioned characteristics, evidencing the intent of John and Maxine to dispose of their estate by a joint and mutual will. The trial court did not err in finding that the 1965 Will was a valid, enforceable contract that became irrevocable upon John's death, and that the asset distribution plans in Maxine's 2008 Will and the Trust violated the agreement embodied within the 1965 Will.

¶ 33    In terms of a proper remedy for the breach, the trial court declared that the asset distribution provisions in the 2008 Will and the Trust would be given no effect. Additionally, the trial court directed the petitioner to place a constructive trust on the assets in Maxine's probate estate and trust, and to conduct an accounting and a distribution of those assets in accordance with the distribution plan in the 1965 Will. While a portion of the relief may have had the practical effect of rendering the distribution provisions in the 2008 Will ineffective, it was an appropriate equitable

remedy and did not convert the proceedings to a will contest. Agreements with respect to joint and mutual wills may be enforced through an action at law for breach of contract or a suit in equity seeking a decree imposing a trust on the property involved. See *Keats v. Cates*, 100 Ill. App. 2d 177, 189 (1968) (citing *In re Estate of Baughman*, 20 Ill. 2d 593, 603 (1960)); see also *Curry v. Cotton*, 356 Ill. 538, 549-50 (1934). One further note—the Chapman respondents filed their contract claim within the time limit set forth in the claims notice, and therefore did not run afoul of Illinois's longstanding policy favoring the orderly administration of estates. *In re Estate of Jeziorski*, 162 Ill. App. 3d 1057, 1062 (1987) (in enacting the Probate Act, the legislature sought to ensure that all claims relating to the administration of estates were handled in the probate proceedings, thereby providing a single forum for settling the rights of the parties).

¶ 34   The Aldrich respondents argued, in the alternative, that the trial court erred in finding that the assets of Maxine Spitler, acquired after John's death, were subject to the terms of the 1965 will. In its order, the trial court specifically found that no proof was presented as to whether any of the assets at issue were "after-acquired" assets and no evidence was offered tracing the acquisition of any assets owned by Maxine or her trust at the time of her death. It appears that the Aldrich respondents failed to develop this alternative theory or to present evidence to support it at trial. Therefore, we cannot conclude that the trial court erred in its determination of the issue.

¶ 35                                 III. CONCLUSION

¶ 36   In summary, the trial court correctly determined that the 1965 document was a joint and mutual will and that the contract embodied therein became irrevocable upon the death of John Spitler. The trial court's findings that Maxine breached her agreement with John when she executed the 2008 Will and the Trust, and that the distribution provisions in the 2008 Will and the Trust violated the terms of the irrevocable contract within the 1965 Will, were supported by the

17

evidence. The trial court declared that the distribution of assets in the 2008 Will and the Trust would not be given effect, that a constructive trust would be imposed for the benefit of the heirs of John Spitler and Maxine Spitler, and that the petitioner would be required to conduct an accounting and distribute all of the assets in accordance with the distribution plan in the 1965 Will. These are appropriate equitable remedies and the trial court did not abuse its discretion in imposing them in this case.

¶ 37 For the reasons stated, we grant the Chapman respondents' petition for rehearing, withdraw our prior Rule 23 order, and affirm the judgment of the trial court.

¶ 38 Affirmed.

¶ 39 JUSTICE BARBERIS, dissenting:

¶ 40 I respectfully dissent from my colleagues' decision to grant the Chapman respondents' petition for rehearing, without providing a new oral argument, but affirm the circuit court's judgment.

¶ 41 In their petition for rehearing, the Chapman respondents argue that this court misapprehended the dual nature of a joint and mutual will. They claim that the joint and mutual will executed by John and Maxine Spitler in 1965 was a contract that became irrevocable upon John's death, and that as third-party beneficiaries of the contract, they had a right to enforce it through a contract claim against the Estate of Maxine Spitler. They further claim that there was no requirement that the 1965 Will be submitted to probate as the last valid will of Maxine Spitler in order for the circuit court to determine the contractual obligations arising from that will and order appropriate remedies for the breach. I disagree.

¶ 42 First, I agree with the majority that subject matter jurisdiction existed. The circuit court, a court of general jurisdiction, had original jurisdiction to hear petitioner's claim concerning the

18

Probate Act. Although the circuit court did not exceed its scope of authority or jurisdiction by considering petitioner's declaratory judgment action, I cannot conclude that the court properly interpreted and then declared a nonprobated will as the last, valid, unrevoked will of Maxine. Our supreme court stated that "[a] will is not effective for any purpose until it is admitted to probate." *Crooker v. McArdle*, 332 Ill. 27, 29 (1928). In fact, "it is the general rule that a will, until it has been duly admitted to probate in the proper court, is wholly ineffectual as an instrument or muniment, or as evidence, of title, or to pass title, or to confer rights." (Internal quotation marks omitted.) *Krasauski v. Birbalas*, 46 Ill. App. 2d 226, 230 (1964) (citing *Barnett v. Barnett*, 284 Ill. 580, 586 (1918)). Here, the record demonstrates that Maxine was the only party to file a petition to probate the 1965 Will. Specifically, Maxine petitioned the circuit court of Lawrence County on January 7, 1982, to probate the 1965 Will as the last will and testament of John. In the present case, no parties petitioned the circuit court of Jasper County to probate the 1965 Will as the last will and testament of Maxine—a fact the court was well aware of at the time of the proceedings. Instead, petitioner attached the 1965 Will as an exhibit to the complaint for declaratory judgment. Pursuant to section 5-1(a) of the Probate Act (755 ILCS 5/5-1(a) (West 2016)), the probate or the administration of a testator's will "shall be in the court of the county *** where [the testator] has a known place of residence." With this in mind, the record, specifically, petitioner's complaint for declaratory judgment, demonstrates that Maxine's known place of residence at the time of her death was in Newton, Illinois, Jasper County. Thus, pursuant to section 5-1(a) of the Probate Act, it would have been proper for Chapman respondents to petition the circuit court of Jasper County to probate the 1965 Will for the court's consideration in determining Maxine's last will and testament. Despite this, the court's December 7, 2021, order conferred rights to the Chapman respondents set forth in the 1965 Will, which was a will that had no legal effect at that time and

19

"[wa]s not admissible in evidence." See *Crooker*, 332 Ill. at 29-30 ("[N]o will is legally effective until it has been admitted to probate."). Based on these principles, I believe the court erred as a matter of law by ruling that the nonprobated 1965 Will was an irrevocable joint and mutual will.

¶ 43    Accordingly, I am of the opinion that the circuit court erred by invalidating the 2008 Will when it granted petitioner's complaint for declaratory judgment, where the court improperly determined that the nonprobated 1965 Will was the last, valid, unrevoked will of Maxine and ordered the distribution of assets in accordance with the 1965 Will.